MIRIAM GORE, Employee, Plaintiff,
v.
MYRTLE/MUELLER, Employer-Defendant,
TRAVELERS INSURANCE COMPANY, Carrier-Defendants.
No. COA05-988
North Carolina Court of Appeals
Filed July 18, 2006
This case not for publication
N.C. Industrial Commission I.C. No. 43566.
Leah L. King, for plaintiff-appellee.
Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Thomas M. Morrow and Dana C. Moody, for defendant-appellants.
JACKSON, Judge.
Myrtle/Mueller and Travelers Insurance Company ("defendants") appeal from the Opinion and Award of the Full Commission of the North Carolina Industrial Commission entered 10 February 2005 by Commissioner Christopher Scott. Heard in the Court of Appeals 8 May 2006.
From 1985 to April 2000, Miriam Gore ("plaintiff") was employed by Haworth, a manufacturer of office furniture, as an inspector. Plaintiff worked as a case cleaning inspector performing random inspections until January 2000, when she was transferred to a station where she performed inspections full time, pushing and pulling desks. On 12 January 2000, sixty-one-year-old plaintiff slipped and fell on a patch of ice in the parking lot of defendants' premises ("January accident"). On 31 March 2000, plaintiff testified that she suffered an aggravation of her back injury or a new back injury as a result of heavy lifting and pushing in the course of her employment with defendants ("March accident").
Defendant Myrtle/Mueller's acting human resource manager, Vera Walker ("Walker"), testified that she was aware of plaintiff's January accident on the day the incident occurred. She recalled filling out a report for the January accident, but not until May 2000. Walker recalled completing a report for the March accident but could not recall the specific date she filled out the report. On 25 May 2000, plaintiff and Walker completed a Form 18 for the March accident, although neither Walker nor plaintiff filed this Form 18 with the Industrial Commission. Furthermore, Walker testified that she told plaintiff that she would check the Form 18 and "find out where it needs to go." On 26 May 2000, defendants filed a Form 61 for the January accident with the Industrial Commission denying plaintiff's claim, and made no reference with regards to the March accident.
On 31 March 2000, plaintiff presented to Dr. John Hodgson who diagnosed plaintiff with Sciatica and prescribed Celebrex for herpain. On 18 April 2000, plaintiff returned to Dr. Hodgson with continued complaints of back pain, as well as arthritic symptoms in her knees, hips, and joints. Following his examination, Dr. Hodgson diagnosed plaintiff with severe back pain and underlying severe osteoarthritis. Dr. Hodgson took X-rays of plaintiff's back that revealed Grade II spondylolisthesis at L5-S1 with marked disk narrowing. On 2 May 2000, Dr. Hodgson diagnosed plaintiff with back pain due to degenerative disk disease and spondylolisthesis. Dr. Hodgson indicated that plaintiff was 100 percent disabled due to back pain from degenerative disk disease and listed 26 April 2000 as plaintiff's last day of work.
On 12 July 2000, plaintiff presented to Dr. Stephen J. Candela for a second opinion evaluation. Dr. Candela noted that plaintiff suffered from pain on her left side and left hip. Dr. Candela diagnosed plaintiff with low back pain syndrome and trochanteric bursitis. Plaintiff continued to see Dr. Candela until 26 April 2001.
On 20 June 2002, plaintiff presented to Dr. Louie E. Tsiktsiris of Carolina Arthritis Associates. Dr. Tsiktsiris determined that plaintiff suffered from degenerative arthritis of her neck and back, myofascial pain, and Grade IV spondylolisthesis of her lumbar spine.
On 5 July 2002, plaintiff presented to Dr. Thomas Melin of Coastal Neurological Associates for a neurosurgical evaluation. Dr. Melin confirmed the diagnosis of L5-S1 spondylolisthesis with resultant back and leg pain and ordered an MRI of plaintiff's lumbar spine. The MRI scan was performed on 11 July 2002, and revealed as L5 spondylolysis with Grade II L5-S1 spondylolisthesis, as well as biforaminal stenosis.
On 31 July 2002 and 20 August 2002, Dr. Charles Hahn with Center for Pain Management, PLLC administered epidural steroid injections into plaintiff's lower lumbar spine area.
On 13 July 2004, the Full Commission reviewed the matter upon the appeal of plaintiff from the Opinion and Award by Deputy Commissioner Nancy Gregory, filed 11 December 2003. The Full Commission held that defendants shall pay plaintiff total disability and plaintiff's past and future medical expenses. Defendants appeal to this Court.
On appeal, defendants argue two issues: (1) the Full Commission erred by concluding that the Industrial Commission had jurisdiction over plaintiff's claims; and (2) the Full Commission erred by concluding that plaintiff suffered from a compensable injury by accident under the Workers' Compensation Act.
First, defendants argue that the Full Commission erred by concluding that the Industrial Commission had jurisdiction over plaintiff's claims.
Findings of jurisdictional facts are not conclusive on appeal, even when supported by competent evidence. Craver v. Dixie Furniture Co., 115 N.C. App. 570, 577, 447 S.E.2d 789, 794 (1994). If the Industrial Commission's jurisdiction is challenged, "the Court may consider all evidence in the record and reach an independent determination." Id. "The jurisdiction of the Industrial Commission is limited by statute." Parker v. Thompson-Arthur Paving Co., 100 N.C. App. 367, 369, 396 S.E.2d 626, 628 (1990) (citing Letterlough v. Atkins, 258 N.C. 166, 168, 128 S.E.2d 215, 217 (1962)). North Carolina General Statutes § 97-24 states that "[t]he right to compensation under this Article shall be forever barred unless (i) a claim . . . is filed with the Commission . . . within two years after the accident[.]" N.C. Gen. Stat. § 97-24(a) (2005). "The two year limitation has repeatedly been held to be a condition precedent to the right to compensation and not a statute of limitations." Id. (citing Montgomery v. Horneytown Fire Dep't, 265 N.C. 553, 555, 144 S.E.2d 586, 587 (1965)). "A consequence of finding the timely filing of a claim to be a condition precedent is that the failure to do so becomes a jurisdictional bar to the right to receive compensation." Id. (citing McCrater v. Stone & Webster Eng'g Corp., 248 N.C. 707, 709, 104 S.E.2d 858, 860 (1958)). "Dismissal of a claim is proper where there is an absence of evidence that the Industrial Commission acquired jurisdiction by the timely filing of a claim or by the submission of a voluntary settlement agreement to the Commission." Reinhardt v. Women's Pavillion, Inc., 102 N.C. App. 83, 86-87, 401 S.E.2d 138, 140-41 (1991)(citing Barham v. Kaysar-Roth Hosiery Co., Inc., 15 N.C. App. 519, 190 S.E.2d 306 (1972)). A jurisdictional bar cannot be overcome by consent of the parties, by waiver or by estoppel. Hart v. Thomasville Motors, Inc., 244 N.C. 84, 88, 92 S.E.2d 673, 676 (1956). This Court has held that a letter to the Industrial Commission was sufficient for purposes of filing a claim. Cross v. Fieldcrest Mills, Inc., 19 N.C. App. 29, 31, 198 S.E.2d 110, 112 (1973). Furthermore, a plaintiff's filed Form 18 is sufficient to give an employer notice of the injury and to file a claim with the Industrial Commission. See Wall v. Macfield/Unifi, 131 N.C. App. 863, 864-65, 509 S.E.2d 798, 799-800 (1998). Pursuant to the Workers' Compensation Rules of the North Carolina Industrial Commission, "[i]n addition to providing the Form 19 to the employee, the employer shall also provide a blank Form 18 for use by the employee." Workers' Comp. R. of N.C. Indus. Comm'n 104, 2006 Ann. R. (N.C.) 958. Form 19 contains the following boilerplate language:
Making a Claim  To be sure you have filed a claim, complete a Form 18, Notice of Accident, within two years of the date of the injury and send a copy to the Industrial Commission and to your employer. The employer is required by law to file this Form 19, but the filing of the Form 19 does not satisfy the employee's obligation to file a claim. The employee must file a Form 18 even though the employer may be paying compensation without an agreement, or the Commission may have opened a file on this claim. A claim may also be made by a letter describing the date and nature of the injury or occupational disease. This letter must be signed and sent to the Industrial Commission and to your employer.
With respect to plaintiff's January accident, Walker testified that she was aware of plaintiff's accident the day it occurred, but that she did not recall completing paperwork for the January accident until May 2000. On 26 May 2000, defendants denied plaintiff's claim by completing a Form 61. On 8 June 2000, defendants filed a Form 19 with the Industrial Commission. On 31 January 2002, plaintiff filed a Form 18 with the Industrial Commission. On 14 March 2002, plaintiff filed a Form 33 with the Industrial Commission, requesting that her claim be assigned for hearing.
Here, plaintiff failed to file a timely claim with the Industrial Commission by submitting a Form 18 or a letter within two years of her January accident. Therefore, plaintiff failed to satisfy the condition precedent of providing notice of her workers' compensation claim to the Industrial Commission within two years of her January accident. Furthermore, neither plaintiffs nor defendants can confer jurisdiction with the Industrial Commission by consent, waiver, or estoppel. Therefore, the Industrial Commission does not have jurisdiction over plaintiff's workers' Compensation claim for the January accident.
As to plaintiff's March accident, Walker and plaintiff completed a Form 18 on 25 May 2000. However, upon a review of the record, neither plaintiff nor defendants filed the Form 18 with the Industrial Commission. On 26 November 2001, plaintiff wrote a letter to the Industrial Commission regarding the dates and nature of the March accident, and attached a Form 33.
Here, plaintiff sufficiently filed a claim for her March accident because she provided notice of her claim to the Industrial Commission within two years of the accident by writing a letter on 26 November 2001. See Cross, supra. Therefore, the Full Commission did not err by concluding that the Industrial Commission had jurisdiction over plaintiff's workers' compensation claim for her March accident.
Because we hold that the Industrial Commission did not have jurisdiction over plaintiff's January accident, and that they did have jurisdiction over plaintiff's March accident, we do not address defendants' equitable estoppel argument.
We now turn to whether the Full Commission erred by concluding that plaintiff suffered from a compensable injury by accident pursuant to the Workers' Compensation Act.
"Appellate review of an award from the Industrial Commission is generally limited to two issues: (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." Clark v. Wal-Mart, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005)(citing Hendrix v. Linn-Corriher Corp., 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986)). Although it is well established that the Industrial Commission is the sole judge of the credibility of the witnesses and the evidentiary weight to be given their testimony, findings of fact by the Commission may be set aside on appeal when there is a complete lack of competent evidence to support them. Young v. Hickory Bus. Furniture, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000). The Commission's conclusions of law are reviewed de novo. Griggs v. Eastern Omni Constructors, 158 N.C. App. 480, 483, 581 S.E.2d 138, 141 (2003). Pursuant to North Carolina General Statutes, Section 97-2(6),
`[i]njury and personal injury' shall mean only injury by accident arising out of and in the course of the employment[.]. . . With respect to back injuries, however, where injury to the back arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned, 'injury by accident' shall be construed to include any disabling physical injury to the back arising out of and causally related to such incident.
N.C. Gen. Stat. § 97-2(6) (2005). There are "two theories on which a back injury claimant can proceed: (1) that claimant was injured by accident; or (2) that the injury arose from a specific traumatic incident." Fish v. Steelcase, Inc., 116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994)cert. denied, 339 N.C. 737, 454 S.E.2d 650 (1995)(citing Richards v. Town of Valdese, 92 N.C. App. 222, 224, 374 S.E.2d 116, 118 (1988), disc. review denied, 324 N.C. 337, 378 S.E.2d 799 (1989)).
An injury is compensable as employment-related if any reasonable relationship to employment exists. Kiger v. Bahnson Serv. Co., 260 N.C. 760, 762, 133 S.E.2d 702, 704 (1963). "Although the employment-related accident 'need not be the sole causative force to render an injury compensable,' the plaintiff must prove that the accident was a causal factor by a preponderance of the evidence." Holley v. ACTS, Inc., 357 N.C. 228, 231-32, 581 S.E.2d 750, 752 (2003) (quoting Hansel v. Sherman Textiles, 304 N.C. 44, 52, 283 S.E.2d 101, 106 (1981); Ballenger v. ITT Grinnell Indus. Piping, Inc., 320 N.C. 155, 158-59, 357 S.E.2d 683, 685 (1987)). In Morrison v. Burlington Indus., our Supreme Court held that
"when an employee afflicted with a pre-existing disease or infirmity suffers a personal injury by accident arising out of and in the course of his employment, and such injury materially accelerates or aggravates the pre-existing disease or infirmity and thus proximately contributes to the death or disability of the employee, the injury is compensable, even though it would not have caused death or disability to a normal person."
Morrison v. Burlington Indus., 304 N.C. 1, 16, 282 S.E.2d 458, 469 (1981) (quoting Little v. Anson County Schools Food Serv., 295 N.C. 527, 531-32, 246 S.E.2d 743, 746 (1978)(quoting Anderson v. Northwestern Motor Co., 233 N.C. 372, 374, 64 S.E.2d 265, 267 (1951))).
"Similarly, if other pre-existing conditions such as an employee's age, education and work experience are such that an injury causes him a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated for the incapacity which he or she suffers, and not for the degree of disability which would be suffered by someone with superior education or work experience or who is younger or in better health."
Id. (quoting Little, 295 N.C. at 531-32, 246 S.E.2d at 746).
"In cases involving 'complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.'" Holley, 357 N.C. at 232, 581 S.E.2d at 753 (quoting Click v. Pilot Freight Carriers, Inc., 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980)). "However, when such expert opinion testimony is based merely upon speculation and conjecture, . . . it is not sufficiently reliable to qualify as competent evidence on issues of medical causation. Id. (quoting Young, 353 N.C. at 230, 538 S.E.2d at 915). "'The evidence must be such as to take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation.'" Id. (quoting Gilmore v. Hoke Cty. Bd. of Educ., 222 N.C. 358, 365, 23 S.E.2d 292, 296 (1942)).
In the present case, the Full Commission's findings of fact include:
3. On January 12, 2000, . . . plaintiff slipped and fell on her left shoulder, wrist, head, and back.
. . .
5. On 31 March 2000, the plaintiff felt a catch or pop in her back as she pulled a desk. On this date she went to Dr. Hodgson, her primary care physician and complained about back pain. Plaintiff was treated conservatively with medication and removed from work for two weeks.
. . .
10. On 6 July 2000 plaintiff was having significant back pain and Dr. Hodgson referred plaintiff to Dr. Candella (sic). Plaintiff reported to Dr. Candella (sic) a history of having significant back pain after moving desks. Dr. Candella (sic) treated plaintiff conservatively with injections of Depomedrol. This treatment had some success but plaintiff's back pain returned with activity.
11. Thereafter, the plaintiff was sent to Dr. Tsiktsiris for an evaluation concerning arthritis. Dr. Tsiktsiris performed a CT scan and referred her to Dr. Melin, a neurosurgeon, and prescribed physical therapy at Columbus Hospital. The plaintiff attended four physical therapy session but had worsening pain and the therapy was discontinued.
12. Dr. Melin diagnosed the plaintiff with L5-S1 Sponylolisthesis. Dr. Melin indicated that an L5-S1 fusion could be an option in the future. Thereafter, Dr. Hahn at Pain Management gave the plaintiff two epidural injections, with the last one being 20 August 2002.
. . .
15. Drs. Hodgson and Melin testified that the traumas described by plaintiff of 12 January 2000 and 31 March 2000 aggravated her preexisting, previously asymptomatic back condition.
16. Dr. Hodgson testified in his deposition that plaintiff's 12 January 2000 injury "could have exacerbated the  pain that [plaintiff] was experiencing or could have caused the pain.
Based upon these findings of fact, the Full Commission concluded that:
1. Plaintiff sustained a compensable injury by accident arising out of and as a direct result of her employment with defendant in that she suffered specific traumatic incidents on 12 January 2000 and 31 March 2000. . . .
2. Plaintiff's workplace injuries of 12 January 2000 and 31 March 2000 aggravated a preexisting, nondisabling condition.
Upon review of the record, the deposition testimonies of Dr. Hodgson and Dr. Melin were based merely upon speculation and conjecture, and were not sufficiently reliable to qualify as competent evidence on issues of medical causation.
With respect to Dr. Hodgson's testimony, he stated that on 31 March 2000, plaintiff presented to him and her chief complaint was ulcers in her mouth, pressure in her ears, and pain in her left lower back. Plaintiff never mentioned her January accident or her March accident at any time. Dr. Hodgson stated that plaintiff suffered from osteoarthritis, degenerative disc disease, and spondylolisthesis, which is essentially arthritis, and that this would be a normal condition for a person of plaintiff's age, weight, and activity level. On direct examination, plaintiff's attorney presented Dr. Hodgson with a hypothetical about the January and March accidents, and asked Dr. Hodgson whether "that [January] accident could have caused the back problems that she presented to you with on March 31st of 2000," to which Dr. Hodgson answer "Ah yes. I think that certainly could've exacerbated or started the painful process in her back."
Here, Dr. Hodgson did not testify that the January or the March accident caused plaintiff's injury compensated under the Industrial Commission's Conclusions. Nor did Dr. Hodgson testify that plaintiff's arthritis, as a preexisting condition, caused the injury compensated. Dr. Hodgson's testimony that, under the hypothetical presented, plaintiff's injury could have exacerbated her back pain is insufficient to satisfy the requirement of sufficient competent evidence tending to show a proximate causal relation between the accident and the injury. Therefore, the Industrial Commission erred in concluding that the January or March accident caused plaintiff's back pain.
With respect to Dr. Melin's testimony, Dr. Melin evaluated plaintiff's condition on 5 and 15 July 2002 because she was referred to him for spondylolisthesis. Plaintiff never mentioned her January or March accidents to Dr. Melin. Plaintiff's attorney asked Dr. Melin if the January and March accident had occurred, whether these "facts and . . . history [were] consistent with the type of trauma that would cause an L5-S1 spondylolisthesis or aggravate that pre-existing condition?" Dr. Melin replied that plaintiff informed him that she had severe pain and problems in her twenties, and that if she had Grade I spondylolisthesis, then this would be a normal progression of disease. Furthermore, Dr. Melin testified that the January and March accidents "could certainly tranform a compensated anomoly of the back to become decompensated and symptomatic," but Dr. Melin did not testify that the January or March accidents caused plaintiff's back pain.
Here, Dr. Melin did not testify that the January or March accidents caused plaintiff's injury that the Industrial Commission deemed compensable. Furthermore, Dr. Melin did not state that plaintiff had a preexisting condition that was aggravated by the January or March accidents. Therefore, the Industrial Commission erred in relying on Dr. Melin's testimony to conclude that the January and March accidents caused plaintiff's back pain.
In addition to testimony from Dr. Hodgson and Dr. Melin, plaintiff testified that she did not tell her physicians that the January or March accidents caused her back pain. Although she testified that she told the physicians she thought her back pain was related to work, this statement is insufficient for the Industrial Commission to conclude that there is competent evidence that the January and March accidents caused plaintiff's back pain. Plaintiff testified that she told Dr. Candela that she sustained injuries at work, but the Industrial Commission did not enter findings of fact that, according to Dr. Candela's testimony, the January or March accident caused plaintiff's back pain.
Upon a full review of the record, we hold that the Industrial Commission's findings of fact were not supported by competent evidence, and the Industrial Commission erred by concluding that plaintiff sustained a compensable injury and that plaintiff's January and March accidents aggravated a preexisting, nondisabling condition. Accordingly, we reverse.
REVERSED.
Chief Judge MARTIN and Judge Levinson concur.
Report per Rule 30(e).